UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>R&W Clark Construction, Inc.,<br><br>    Debtor.<br><br>―――――――――――――――――<br><br>Chicago & Vicinity Laborers' District Council Pension Plan, Chicago & Vicinity District Council Laborers' Welfare Plan, Chicago & Vicinity District Council Retiree Welfare Plan and Catherine Wenskus, not individually but as Administrator of the Funds,<br><br>    Plaintiffs,<br><br>v.<br><br>R&W Clark Construction, Inc.,<br><br>    Defendant.<br><br>―――――――――――――――――| Case No. 23bk03279<br><br>Chapter 11<br><br><br><br><br><br><br><br><br><br>Adv. No. 23ap00127<br><br>Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

<u>MEMORANDUM DECISION</u>

This matter comes on for consideration on the Motion to Dimsiss [sic] Adversary Complaint [Adv. Dkt. No. 12] (the "<u>Motion to Dismiss</u>"), filed by R&W Clark Construction Inc. ("<u>R&W</u>"), the defendant in the above-captioned adversary proceeding (the "<u>Adversary Proceeding</u>") and debtor in the above-captioned chapter 11 bankruptcy case (the "<u>Main Case</u>").[1]

The Motion to Dismiss seeks dismissal of the Adversary Complaint [Adv. Dkt. No. 1] (the "<u>Complaint</u>") brought by the Chicago & Vicinity Laborers' District Council Pension Plan, the Chicago & Vicinity District Council Laborers' Welfare Plan, the Chicago & Vicinity Laborers' District Council Retiree Welfare Plan (collectively "<u>Funds</u>"), and Catherine Wenskus, as Administrator of the Funds (together with the Funds, the "<u>Plaintiffs</u>").  In the Complaint, the Plaintiffs seek a judgment of nondischargeability against R&W for all unpaid fringe benefit contributions, dues, interest, liquidated damages and audit costs due and owing on the audit for the

―――――――――――――――

[1]    References to docket entries in Adversary Proceeding will be denoted as "Adv. Dkt. No. ___."
References to docket entries in the Main Case will be denoted as "Dkt. No. ___."

period of October 1, 2014, to and including December 31, 2018, including Plaintiffs' reasonable attorneys' fees and costs incurred, as follows (the "Counts" and as to each, "Count __"):

Count I:        For money, property, services or an extension, renewal or refinancing of credit that was obtained by false pretenses, false representation or actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A);

Count II:       For money, property, services or an extension, renewal or refinancing of credit that was obtained by materially false statements pursuant to 11 U.S.C. § 523(a)(2)(B); and

Count III:      For willful and malicious injury by R&W to another entity or to the property of another entity pursuant to 11 U.S.C. § 523(a)(6).

The Motion to Dismiss advocates for dismissal on two grounds:  That the Plaintiffs are unentitled to relief under these Counts as R&W is not an individual debtor and that the Complaint insufficiently pleads relief in Count II.

For the reasons more fully set forth below, upon review of the parties' respective filings and after conducting a hearing on the matter, the Court finds that the Motion to Dismiss is well taken. As a result, by separate order entered concurrent herewith, the Motion to Dismiss with be GRANTED and the Complaint will be DISMISSED.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").  28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b).  District courts may refer these cases to the bankruptcy courts for their districts. 28 U.S.C. § 157(a).  In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois.  N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy court judge to whom a case has been referred has statutory authority to enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(1).  Bankruptcy court judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(3).  As to the former, the bankruptcy court judge may hear and determine such matters.  28 U.S.C. § 157(b)(1).  As to the latter, the bankruptcy court judge may hear the matters, but may not decide them without the consent of the parties.  28 U.S.C. §§ 157(b)(1) & (c).  Absent consent, the bankruptcy court judge must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

2

In addition to the foregoing considerations, a bankruptcy court judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall,* 564 U.S. 462 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.,* or where the parties have consented, either expressly or impliedly, to the bankruptcy court judge hearing and determining the matter. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. 665, 669 (2015) (parties may consent to a bankruptcy court judge's jurisdiction); *Richer v. Morehead,* 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

> "[A]n action under section 523 of the Bankruptcy Code is unequivocally a bankruptcy cause of action. *In re Glenn,* 502 B.R. 516, 522 (Bankr. N.D. Ill. 2013) (Barnes, J.), *aff'd sub nom. Sullivan v. Glenn,* 526 B.R. 731 (N.D. Ill. 2014), *aff'd,* 782 F.3d 378 (7th Cir. 2015). It arises in a case under title 11 and the code specifies it as a core proceeding. 28 U.S.C. § 157(b)(2)(I). While such actions may turn on state law, determining the scope of a debtor's discharge is a fundamental part of the bankruptcy process. *See Deitz v. Ford (In re Deitz),* 469 B.R. 11, 20 (B.A.P. 9th Cir. 2012). As observed by one bankruptcy court, "there can be little doubt that [a bankruptcy court], as an Article I tribunal, has the constitutional authority to hear and finally determine what claims are nondischargeable in a bankruptcy case." *Farooqi v. Carroll (In re Carroll),* 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011); *see also Deitz,* 469 B.R. at 20; *In re Boricich,* 464 B.R. at 337.

*Handler v. Moore (In re Moore),* 625 B.R. 896, 900 (Bankr. N.D. Ill. 2021) (Barnes, J.).

It follows that a Motion to Dismiss such an action is also a core proceeding within this court's jurisdiction to determine. By commencing the Adversary Proceeding and filing claims in the Main Case, the Plaintiffs have unequivocally submitted themselves to the jurisdiction and authority of the court on these matters. *Langenkamp v. Culp,* 498 U.S. 42, 43 (1990). Further, no party has objected to the Court entering final orders on the Motion to Dismiss and thus all parties have impliedly consented to this Court's jurisdiction and authority. *See Wellness,* 575 U.S. at 669; *Richer,* 798 F.3d at 490; *Moore,* 625 B.R. at 900.

Accordingly, the Court has the jurisdiction, statutory authority and constitutional authority to hear and determine both the Complaint and the Motion to Dismiss.

PROCEDURAL HISTORY

In taking up the Motion to Dismiss, the Court has considered the Complaint, the Motion to Dismiss, and the arguments of the parties at the hearing on December 6, 2023, and has reviewed and considered the following filed documents relating to the Motion to Dismiss:

(1)     [Scheduling] Order [Adv. Dkt. No. 17];

(2)     Plaintiffs' Response to Defendant's Motion to Dismiss Adversary Complaint [Adv. Dkt. No. 31]; and

(3)     Reply in Support of Dismissal of Adversary Proceeding [Adv. Dkt. No. 35].

3

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though these items do not constitute an exhaustive list of the filings in the Adversary Proceeding or Main Case, the court has taken judicial notice of the contents of the dockets in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

## SUMMARY OF ISSUES PRESENTED

The matter before the court presents somewhat of a *cause célèbre* in the bankruptcy world in recent years.[2] On August 23, 2019, Congress enacted the Small Business Reorganization Act of 2019, Public Law No. 116-54 (August 23, 2019) (the "SBRA"). In the SBRA, Congress created a somewhat simpler path for business reorganizations under chapter 11 of the Bankruptcy Code. This simpler path has been codified into chapter 11 of the Bankruptcy Code as Subchapter V (Small Business Reorganization), 11 U.S.C. §§ 1181–95 ("Subchapter V").

As with any change to an existing statute, the way in which the change is integrated with what comes before is crucial to understanding how the change will operate. Subchapter V is no different. What is, perhaps, different, is that Congress gave the courts little or no guidance as to what it intended in making its changes, leaving it to the courts to divine Congress's intent on issues such as that at bar.

The issue is a simple one, best asked in the form of questions: Did Congress, in enacting the SBRA and codifying Subchapter V intend to upset the existing scheme of discharge of debts for business entities? Further, regardless of Congress's intent, does the plain language of what was enacted have that effect? If the latter answer is no, then the Motion to Dismiss is well taken. The Complaint must be dismissed because an action for nondischargeability under section 523 of the Bankruptcy Code does not sound against business entities. If it is yes, then the Motion to Dismiss fails at least on this theory.

## DISCUSSION

The Plaintiffs here seek a judgment of nondischargeability under section 523(a) of the Bankruptcy Code against R&W, a business entity. Plaintiffs are aware of R&W's status as an Illinois corporation and have pled the same in the Complaint. Compl., at ¶ 5.

But nondischargeability under section 523(a) applies only to individuals. 11 U.S.C. § 532(a) ("A discharge under section … 1141 ... does not discharge *an individual debtor* from any debt ….") (emphasis added). Congress, perhaps thinking it tautological, did not see fit to define what an individual means in the context of the Bankruptcy Code. But in other definitions, Congress made clear that corporations are not individuals. For example, in defining "person," Congress makes clear that a person can include an individual, a partnership and a corporation. 11 U.S.C. § 101(41).

---

[2]      *See* 31st Annual Duberstein Moot Court Competition Problem (2023) [available at https://www.stjohns.edu/sites/default/files/2023-01/2023%20Duberstein%20Problem%20Updated.pdf] [last visited February 5, 2024].

So a corporation is not an individual and thus section 523(a) does not apply. *Yamaha Motor Corp. v. Shadco, Inc.*, 762 F.2d 668, 670 (8th Cir. 1985) (Affirming a bankruptcy court's dismissal of a section 523(a) action against a corporate debtor, as "Congress clearly did not intend the term 'corporate debtor' to be used interchangeably with the term 'individual debtor,' as such a construction would 'render meaningless employment by Congress of the term 'individual'.'") (citation omitted); *see also Spring Valley Farms, Inc. v. Crow (In re Spring Valley Farms, Inc.)*, 863 F.2d 832, 834 (11th Cir. 1989) (same); *Boyle v. PMA Med. Specialists, LLC*, 754 F. App'x 93, 96 (3d Cir. 2019) (same). End of story.

Not so fast. While section 523 seems to speak for itself, Congress also addressed this issue in section 1141, the discharge provisions for chapter 11. In section 1141, Congress stated what should perhaps have been obvious from the plain language of section 523(a), that "[a] discharge under this chapter does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title." 11 U.S.C. § 1141(d)(2). Now that statement was indeed tautological, as section 523 applies to all later chapters of the Bankruptcy Code, *see* 11 U.S.C. § 103(a) ("chapters 1, 3, and 5 of this title apply in a case under chapter … 11"), and already, as discussed above, excludes individuals. So once again, end of story, right?

Once again, not so fast. In enacting the SBRA and codifying Subchapter V, Congress once again chose not to let the existing language speak for itself. In section 1192, Congress stated that "the court shall grant the debtor a discharge … except any debt … *of the kind* specified in section 523(a) of this title." 11 U.S.C. § 1192(2) (emphasis added). At the same time, the SBRA amended the text of section 523(a) to make clear that it applied to discharges under section 1192. 11 U.S.C. § 523(a).

What are courts supposed to do with this new "of the kind" language? Did Congress intend, by including this phrase and once again qualifying the discharge under chapter 11, to undo the express language of sections 523(a) and 1141(d)(2) and to subject corporate debtors to nondischargeability actions simply because they chose to proceed under Subchapter V?

That is certainly one possibility and has led some courts to conclude that Congress did so intend. *See, e.g.*, *Cantwell-Cleary Co., Inc. v. Cleary Packaging, LLC (In re Cleary Packaging, LLC)*, 36 F.4th 509, 515 (4th Cir. 2022).

But other courts take, what this court believes to be, a more conservative approach. *See, e.g.*, *Lafferty v. Off-Spec Sols., LLC (In re Off-Spec Sols., LLC)*, 651 B.R. 862 (B.A.P. 9th Cir. 2023), *appeal dismissed,* Case No. 23-60034, 2023 WL 9291577 (9th Cir. Nov. 2, 2023).

With this in mind, the court considers the positions taken in each of the above-cited leading cases on the issue.

A.      *Cleary Packaging* – Section 523 Applies to Corporate Subchapter V Debtors

In *Cleary Packaging*, the Fourth Circuit considered the issue on direct appeal from the bankruptcy court's dismissal for failure to state a claim in a section 523(a) adversary proceeding against a corporate Subchapter V debtor. *Cleary Packaging*, 36 F.4th at 512.

The Fourth Circuit first focused on the language of section 1192, that a discharge thereunder does not apply to "any debt … of the kind specified in section 523(a) of this title." 11 U.S.C.

5

§ 1192(2). The Fourth Circuit found the reference to debt telling, concluding that this phrase was a shortcut to applying the subsections of section 523(a) without the limiting language of section 523(a) itself. As it stated, "[b]y referring to the *kind of debt* listed in § 523(a), Congress used a shorthand to avoid listing all 21 types of debts [sic], which would indeed have expanded the one-page section to add several additional pages to the U.S. Code. Thus, we conclude that *the debtors* covered by the discharge language of § 1192(2) — *i.e.*, both individual and corporate debtors — remain subject to the 21 *kinds of debt* listed in § 523(a)." *Cleary Packaging*, 36 F.4th at 515 (emphasis in original).

Further, the Fourth Circuit wrote that the more specific provisions of section 1192(2) should govern the more general provisions of section 523(a). *Id.*; *see also, e.g.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("it is a commonplace of statutory construction that the specific governs the general"); *Busic v. United States*, 446 U.S. 398, 406 (1980) ("[A] more specific statute will be given precedence over a more general one, regardless of their temporal sequence."); *In re Concepts America, Inc.*, 625 B.R. 881, 887 (Bankr. N.D. Ill. 2021) (Cleary, J.) ("The general/specific canon is perhaps the most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission.") (*quoting RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012)).

Going further, the Fourth Circuit appeared to find that Congress's restating in each individual chapter of the Bankruptcy Code whether the discharge therein applies to individuals, corporations, or both, *see, e.g.*, 11 U.S.C. §§ 727(a)(1), 1141(d)(2), (5) & 1328, was evidence of Congress's intent to not rely on the scheme set forth in section 523(a). *Cleary Packaging*, 36 F.4th at 516.

The Fourth Circuit appeared also to conclude that the use of the phrase "of a kind" was an intentional choice of Congress to "import" similar language from chapter 12. *Id.*; *see* 11 U.S.C. § 1228(a). As the Fourth Circuit observed, courts that had construed that phrase in section 1228 had concluded that it overrode the express language of section 523(a). *Cleary Packaging*, 36 F.4th at 516; *S.W. Ga. Farm Credit, Aca v. Breezy Ridge Farms, Inc. (In re Breezy Ridge Farms, Inc.)*, Adv. Case No. 09-1011, Case No. 09-1011, 2009 WL 1514671, at *2 (Bankr. M.D. Ga. May 29, 2009); *New Venture P'ship v. JRB Consol., Inc. (In re JRB Consol., Inc.)*, 188 B.R. 373, 374 (Bankr. W.D. Tex. 1995).

Finally, projecting what Congress's intent might have been on this point in the SBRA, the Fourth Circuit hypothesized that Congress might have added "an additional layer of fairness to balance against the altered order of priority [by eliminating the absolute priority rule in Subchapter V cases] that favors the debtor." *Cleary Packaging*, 36 F.4th at 517.

As is clear from the foregoing, many of the conclusions—especially those that appear to project Congress's intentions—are suspect. Not surprisingly, the Plaintiffs cite no decision on this issue adopting the reasoning of *Cleary Packaging*. The court's own review of the case law has found none either, published or unpublished.

B.    *Off-Spec Solutions* – Section 523 Does Not Apply to Corporate Subchapter V Debtors

The better position is that espoused in *Off-Spec Solutions*. *Off-Spec Sols.*, 651 B.R. at 867. In *Off-Spec Solutions*, the Ninth Circuit Bankruptcy Appellate Panel considered these same issues, but began by pointing out that every court other than the one in *Cleary Packaging* that has considered this issue has concluded the opposite of *Cleary Packaging*. *Id.* at 865 (*citing to BenShot, LLC v. 2 Monkey*

6

*Trading, LLC (In re 2 Monkey Trading, LLC)*, 650 B.R. 521 (Bankr. M.D. Fla. 2023); *Nutrien Ag Sols., Inc. v. Hall (In re Hall)*, 651 B.R. 62 (Bankr. M.D. Fla. 2023); *Avion Funding, LLC v. GFS Indus., LLC (In re GFS Indus., LLC)*, 647 B.R. 337 (Bankr. W.D. Tex. 2022); *Jennings v. Lapeer Aviation, Inc. (In re Lapeer Aviation, Inc.)*, Adv. Case No. 22-3002, Case No. 21-31500-jda, 2022 WL 1110072 (Bankr. E.D. Mich. Apr. 13, 2022); *Catt v. Rtech Fabrications, LLC (In re Rtech Fabrications, LLC)*, 635 B.R. 559 (Bankr. D. Idaho 2021); *Cantwell-Cleary Co. v. Cleary Packaging LLC (In re Cleary Packaging LLC)*, 630 B.R. 466 (Bankr. D. Md. 2021), *rev'd*, 36 F.4th 509 (4th Cir. 2022); *Gaske v. Satellite Rests. Inc. Crabcake Factory USA (In re Satellite Rests. Inc. Crabcake Factory USA)*, 626 B.R. 871 (Bankr. D. Md. 2021)).

The Panel in *Off-Spec Solutions* began where such inquiries should begin, with a plain language analysis of the language of the statute itself. *Off-Spec Sols.*, 651 B.R. at 866 (*citing to United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). As it stated, "[s]ection 523(a) unambiguously applies only to individual debtors." *Id.* at 867. It found that section 1192(2) created no ambiguity when viewed in the light that "§ 1192 reiterates § 523(a)'s application to debtors under subchapter V, and § 523(a) limits its applicability to individuals." *Id.* Ambiguity, it observed, was created when trying to read section 1192(2) as obviating "the express limitation in the preamble of § 523(a) or otherwise expand[ing] its scope to corporate debtors." *Id.*

It also considered the amendment to section 523(a)'s preamble in the SBRA as telling. If, it reasoned, section 1192(2) was there to change the operation of section 1141, then there was no need to add section 1192 to section 523(a). The existing reference to section 1141 would have sufficed. *Id.* Further, the addition of section 1192 to section 523(a)'s preamble, the very preamble that the Fourth Circuit believed did not apply to section 1192, would be nonsensical. The Fourth Circuit's reading would render the addition to section 523(a) meaningless, which in turn would violate the canon against surplusage. *Id.* at 867–68 (*citing to Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.")).

The Ninth Circuit also rejected the Fourth Circuit's reading of the general/specific canon. In addition to taking issue with the scope of the Fourth Circuit's application of the canon, as the Panel pointed out, the canon is only applicable when two statutes cannot be reconciled. *Id.* at 868. Only the Fourth Circuit's reading of section 1192(2) creates an irreconcilable difference. Without such a conflict, the canon simply does not apply. *Id.*

The Panel next took up the issue of section 1192 in the context of chapter 11 itself as well as within the Bankruptcy Code as a whole. *Id.* at 868–69. As to the former, there is no question that corporate debtors are not subject to section 523(a) actions in chapter 11 as a whole. Section 1141 makes that clear. But even without section 1141, the context of the Bankruptcy Code makes clear that this would be the case. The preamble of section 523(a) would achieve that same result, and section 103 of the Bankruptcy Code makes section 523(a) applicable to all subsequent chapters. *Id.* While Congress's inclusion of references to section 523 in subsequent chapters is redundant, *id.* at 868, "redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication." *Barton v. Barr*, 590 U.S. —, 140 S. Ct. 1442, 1453 (2020). "Redundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text . . . ." *Id.*

7

As to chapter 12, the Ninth Circuit found that the cases relied on by *Cleary Packaging* were inapplicable as they too attempted to apply the general/specific canon which, unless a court were to adopt the *Cleary Packaging* reading to create ambiguity, would not apply. *Id.* at 870. Further and more compelling, the Panel found that the phrase in question—"of a kind"—in chapter 12 existed in chapter 13 prior to its incorporation in chapter 12. *Id.*; *see* 11 U.S.C. § 1328(c). As the Ninth Circuit Panel observed, to read the "of a kind" language in chapter 12 as an intentional workaround to the preamble of section 523(a) makes no sense in the context of chapter 13, which applies only to individual debtors. What, exactly, would Congress have been working around in section 1328(c)? *Id.* at 871.

Finally, the Ninth Circuit rightfully questioned the Fourth Circuit's projection of Congress's intent. *Id.* at 872. Rather than attempt to substitute a separate, projected rationale, the Panel questioned the Fourth Circuit's conclusion that the application of section 523 to Subchapter V corporate debtors was a true *quid pro quo* for the elimination of the absolute priority rule. *Id.* As it stated, "[r]endering certain debts nondischargeable is more likely to harm most general unsecured creditors by steering small businesses with nondischargeable debts toward liquidation." *Id.* "Construing § 1192 to make debts nondischargeable for corporate debtors offers little benefit to unsecured creditors in small business cases and poses serious obstacles to the stated purpose of the SBRA to make reorganization efficient and expeditious for small business debtors." *Id.* at 873.

C.      Reconciling the Positions

As is no doubt clear from the foregoing descriptions, the court is not swayed by the reasoning of *Cleary Packaging*. Not only does it project rationales for Congress without evidence of the same, but it creates more problems for the statutes in question than it solves. Further, there can be no question that had Congress the intent projected on it by the Fourth Circuit, there were countless clearer and simpler ways to achieve that end. The reasoning of *Off-Spec Solutions* is much more compelling. Not only does it point out the preceding flaws, but it makes a compelling case that the conclusions drawn from the same language in chapter 12 are fundamentally flawed.

There is, quite frankly, no ambiguity in the language. Imprecision is not ambiguity. *In re Spiegel*, 638 B.R. 606, 614 (Bankr. N.D. Ill. 2022) (Barnes, J.). There is no reasonable reading of the language that results in the conclusion that its intent is anything other than to reiterate what Congress had already written in section 523(a)—something Congress has done throughout the Bankruptcy Code. The courts should be very hesitant to substitute their legislative intent for Congress's in mere cases of statutory imprecision.

Recently this court observed that when a statute might be interpreted to vary from an "accumulated settled meaning" in common law, Congress must be "unmistakably clear" of its intent to do so. *In re Hicks*, 653 B.R. 562, 567–68 (Bankr. N.D. Ill. 2023) (Barnes, J.) (*citing to N.L.R.B. v. Amax Coal Co.*, 453 U.S. 322, 329 (1981)). "[S]uch intent must be made with specificity and cannot be done through implication." *Id.* at 568 (*citing to BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 546 (1994); *Pac. Gas & Elec. Co. v. Ad Hoc Comm. of Holders of Trade Claims (In re PG&E Corp.)*, 46 F.4th 1047, 1058 (9th Cir. 2022), *cert. denied Pac. Gas & Elec. Co. v. Ad Hoc Comm. of Holders of Trade Claims*, — U.S. —, 143 S. Ct. 2492 (2023)).

While these rules may not directly apply to a statutory change that upsets the existing scheme of the statute, they should. There is nothing other than implication to support the *Cleary Packaging*

8

reading of the sections. The better reading of sections 1192(2) and 523(a) is that Congress did not through inartful language attempt to upset the existing, fundamental nature of either chapter 11 or the Bankruptcy Code as a whole.

As a result, section 523(a) simply does not apply to corporate debtors in chapter 11, whether they be in Subchapter V or otherwise. As a result, the court must take up the Motion to Dismiss's request for dismissal under the Federal Rules of Civil Procedure (the "Civil Rules" and as to each, "Civil Rule __").

Civil Rule 12 provides, in pertinent part, that a party may seek dismissal of a complaint for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure). As this court has stated:

> A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In assessing sufficiency, the [c]ourt views the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *Anchorbank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

*Muhammad v. Reed* (*In re Reed*), 532 B.R. 82, 87–88 (Bankr. N.D. Ill. 2015) (Barnes, J.).

The allegations of the Complaint must raise the Plaintiffs' right to relief above a "speculative level." *Brandt v. PlainsCapital Leasing, LLC* (*In re Equip. Acquisition Res., Inc.*), 502 B.R. 784, 791 (Bankr. N.D. Ill. 2013) (Barnes, J.) (*citing to Twombly*, 550 U.S. at 570). Thus the standard for evaluating the sufficiency of the Complaint "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Anchorbank*, 649 F.3d at 614 (citation omitted); *see also Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005).

When a complaint pleads for relief under an inapplicable statute and makes no other claims, no set of facts even if well plead could allow such a matter to proceed to discovery. Such a complaint fails to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), and must be dismissed. *Beezley v. Fremont Indem. Co.*, 804 F.2d 530, 531 (9th Cir. 1986); *see also Jackson v. Michigan State Democratic Party*, 593 F. Supp. 1033, 1045 (E.D. Mich. 1984). Further, dismissal with prejudice is appropriate. *Beezley*, 804 F.2d at 531.

CONCLUSION

Given that section 523(a) does not apply to the Debtor here and the Complaint sounds entirely in causes of action under section 523(a), the Complaint fails to state a claim upon which relief can be granted. As result, the Motion to Dismiss must be GRANTED and the Complaint DISMISSED, with prejudice. The court need not reach the Plaintiffs' alternative arguments under section 523(a).

9

A separate order will be entered concurrently with this Memorandum Decision to that effect.

Dated: February 8, 2024

ENTERED:

_____
Timothy A. Barnes
Judge, United States Bankruptcy Court